# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

MARGARET M. HENRY,

                    Debtor.

Case No.  A16-00405-GS
Chapter 7

## MEMORANDUM DECISION RE SANCTIONS PURSUANT
## TO ORDER TO SHOW CAUSE, AND ON DISMISSAL OF CASE

On March 9, 2017, the court conducted a hearing on its Order to Show Cause and Setting Hearing ("Order") (ECF No. 20).  Pursuant to the Order, the court required Eric Auten, counsel for the debtor, to personally appear, and show cause why sanctions should not be entered for the filing of the instant bankruptcy.  Mr. Auten appeared and provided testimony at the hearing.  The debtor, Margaret Henry, appeared telephonically, and also provided testimony.  Kathryn Evans Perkins appeared telephonically on behalf of the United States Trustee ("UST").

The court has carefully considered the arguments and evidence presented in response to its Order, and finds that counsel attempted to deceive his client when he filed her bankruptcy petition in Alaska more than 19 months after she signed her bankruptcy paperwork.  At the time she signed those documents, and at the time they were filed with the court, counsel knew the debtor was no longer a resident of this district.   Further, the supporting bankruptcy documentation filed by counsel was stale, incomplete, and inadequate to satisfy the debtor's obligations in bankruptcy.  Counsel took these actions in an attempt to conceal his failure to timely commence her bankruptcy case.  For these reasons, the court will enter sanctions against Mr. Auten under Fed. R. Bankr. P. 9011 for frivolous filings, as well as under the court's inherent authority to redress egregious conduct in his representation of the debtor.[1]

_____

[1] This memorandum constitutes the court's findings of facts and conclusions of law under Fed. R. Civ. P. 52, made applicable by Fed. R. Bankr. P. 7052, 9014(c).

## FACTS

### A.    The Bankruptcy Filing.

On December 30, 2016, attorney Eric Auten filed a chapter 7 petition on behalf of debtor Margaret Henry.  Included with the petition were most of the supporting documents required under 11 U.S.C. § 521 and Fed. R. Bank. P. 1007(b), although the forms used were out of date.[2] The documents were filled out with varying levels of detail.  The petition listed a temporary street address for the debtor in Grants Pass, Oregon, but used counsel's post office box address in Valdez, Alaska, as her mailing address.  The debtor appears to have signed the petition, but did not enter the date of her signature.  Next to his signature on the petition, Mr. Auten wrote his birth date in 1970, rather than the actual date he executed the document.

The debtor's schedules list no real property and minimal personal property.  Krista White & Assoc. is the sole creditor listed, as a secured creditor holding a judgment lien in the principal amount of $28,226.00.  Schedule I indicates that the debtor was employed by Southern Oregon Elmer's LLC in Grants Pass, Oregon, where she earned $1,087.00 in monthly wages.  In addition, the debtor received $1,147.00 in monthly Social Security payments as well as the Alaska Permanent Fund Dividend.  Including governmental assistance, consisting of food stamps, the debtor's monthly income is listed as $2,356.00.[3]  Her Schedule J disclosed only

---

[2] The debtor's petition, Statement of Financial Affairs, and Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Means Test") were on forms dated "04/13."  Her Schedules were on forms dated "12/09."  At the time of filing, all of these forms were obsolete.  They had been updated and renumbered effective December   1, 2015.   *See* Clerk's Notice re: Pending Changes at *http://www.akb.uscourts.gov/news/2015.*

[3] The correct sum appears to be $2,446.00.

$1,425.00 in monthly expenses, leaving her with $931.00 in monthly net income. The debtor

signed a Declaration Concerning Debtor's Schedules, and dated her signature for May 16, 2015.[4]

The debtor's Form B22A Chapter 7 Statement of Current Monthly Income and Means-

Test Calculation ("Means Test") is similarly dated May 16, 2015.[5] The form lists the debtor's

monthly income as $2,356.00, the same figure shown as her monthly income on Schedule I,

although all of her income was listed as wages. No payment advices were filed.

At the time he filed the bankruptcy, Mr. Auten also included the debtor's Statement of

Financial Affairs ("SOFA"), which was unsigned. The document lists "[m]onthly income from

current job, Jan. 1, 2015 through filing" as $1,087.00, and indicates that monthly social security

payments of $1,147.00 began in October 2015.[6] The SOFA also discloses that Mr. Auten

received $2,000.00 plus $100.00 for debt counseling on June 1, 2014. Mr. Auten dated his

attorney disclosure statement December 29, 2016.

The debtor's Certificate of Credit Counseling was filed December 30, 2016,

contemporaneously with the petition. This certificate reflects that Ms. Henry obtained the

required prepetition credit counseling via the Internet on October 31, 2016.[7]

**B.      The US Trustee's Motion to Dismiss.**

The clerk of the court issued a Notice Requiring Original Signature the same day the

petition was filed, which required the debtor to provide an original signature for her SOFA

---

[4] ECF No. 1-2 at 2.

[5] ECF No. 1-4 at 9. This form was also obsolete. The Means Test was another one of the forms that had been renumbered and updated effective December 1, 2015. *See supra* note 2.

[6] ECF No. 1-3 at 1-2.

[7] ECF No. 2.

within 14 days.[8]  To date, the debtor has not filed a signed SOFA.  Further, the debtor has never filed copies of her payment advices for the 60 days preceding the filing of her petition.  Due to these omissions, the UST filed and noticed a hearing on its Standing Motion to Dismiss on January 27, 2017.[9]  The hearing was scheduled for February 7, 2017.  The debtor was mailed a copy of the notice of hearing at Mr. Auten's post office box address in Valdez.

The meeting of creditors was originally scheduled for February 2, 2017.[10]  The docket reflects that the panel trustee continued the meeting until March 2, 2017, but does not indicate whether the debtor or Mr. Auten appeared at the initial meeting of creditors.

Neither the debtor nor Mr. Auten filed a response to the Standing Motion to Dismiss, nor did either of them appear at the February 7, 2017 hearing on that motion.  Kathleen Perkins, appearing for the UST, attended the hearing.  She informed the court of her office's unsuccessful attempts to contact Mr. Auten to discuss the deficiencies in this case.  Further, because notices to the debtor were being sent to Mr. Auten's mailing address, Ms. Perkins stated her concern that the debtor might be unaware of the pending motion to dismiss.  Based upon these concerns the court continued the hearing at the UST's request.

During the February 7 hearing, the court raised its own concerns regarding this case.  It noted the discrepancies in the dates of the documents filed, the incomplete bankruptcy filing, Mr. Auten's failure to respond to either the Motion to Dismiss or Mr. Perkin's efforts to contact him, and the amount of fees Mr. Auten had charged the debtor in light of these deficiencies.  For these

---

[8] ECF No. 4.

[9] ECF No. 17.

[10] Notice of the initial creditor's meeting was given in the Notice of Chapter 7 Bankruptcy Case,  ECF No. 9.  The debtor and Mr. Auten were each mailed a copy of this notice on January 5, 2017, addressed to Mr. Auten's Valdez post office box address.  *See* Certificate of Notice, ECF No. 13.  This notice was not sent to the debtor's temporary address in Grants Pass, Oregon.

reasons, the court entered its Order requiring Mr. Auten to appear at the March 9 hearing and show cause why he should not be sanctioned pursuant to Fed. R. Bankr. P. 9011(c)(1)(B) for violations of Rule 9011(b), or under its inherent authority to sanction attorneys.[11]  The Order required Mr Auten to explain:  1) the basis for filing a bankruptcy in the District of Alaska for a debtor who was not domiciled, and had not resided, within the district for at least the prior 17 months, 2) the good faith factual and legal basis for claiming Alaska state exemptions in this case, in light of the issues regarding the debtor's residency status, and 3) the good faith factual and legal basis for filing a statement of current monthly income covering a period ending 19 months prior to the bankruptcy filing.[12]  The Order specifically gave Mr. Auten notice that the court would consider imposing: 1) an award of monetary sanctions, 2) requiring disgorgement of fees, and/or 3) suspension or disbarment from filing any further bankruptcy cases in this district, based his conduct.[13]

## C.    The Hearing on the Order to Show Cause.

As required, Mr. Auten appeared at the March 9th hearing on the Order.  Ms. Henry appeared, by telephone, and testified that she had first discussed the need for a bankruptcy filing with Mr. Auten as early as 2013.  As of their first meeting, Ms. Henry was an Alaska resident. In July 2014, however, Ms. Henry moved to Oregon.  Before she moved, she met with Mr. Auten to further discuss her bankruptcy filing.  She testified that she informed Mr. Auten of her move, and inquired whether it would affect her ability to file for bankruptcy in Alaska.  Ms. Henry recalled that Mr. Auten advised that it would not, and that he told her that they would use

---

[11] *See  Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052, 1058 (9th Cir. 2009), *cert. denied*, 558 U.S. 1048 (2009).

[12] Order, ECF No. 20 at 3-4.

[13] *Id.* at 4.

his post office box as her mailing address. Ms. Henry paid Mr. Auten his legal fee of $2,000.00 before she moved to Oregon.

Mr. Auten mailed the bankruptcy paperwork, including the schedules and statements, to Ms. Henry after she had moved to Oregon. She signed the documents on May 16, 2015, and returned them to Mr. Auten. She recalls taking the credit counseling course in 2015, in anticipation of Mr. Auten filing her bankruptcy at that time. Having paid Mr. Auten, filled out the bankruptcy forms, and taken the credit counseling course, Ms. Henry assumed that Mr. Auten had filed her bankruptcy. She sporadically spoke with him about her case. In these conversations, Mr. Auten never disclosed that the bankruptcy had not yet been filed. Ms. Henry was adamant in her testimony that throughout these conversations he lead her to believe that he had filed her bankruptcy petition in 2015.

In the fall of 2016, more than a year after she had signed her bankruptcy documents, Mr. Auten informed Ms. Henry that she needed to again take the prepetition credit counseling course. He provided no reason for this request, but Ms. Henry did as she was instructed.[14]   On October 31, 2016, Ms. Henry obtained her second credit counseling certificate.

Ms. Henry further testified that she was unaware of either the initial or rescheduled § 341 meeting of creditors. Similarly, she did not know about the UST's motion to dismiss her case. Mr. Auten acknowledged that he had received notice of the hearing on the motion to dismiss, but had failed to inform his client of that motion or the scheduled hearing. Only after the court's Order was mailed directly to Ms. Henry in Oregon did she discover that her bankruptcy case had not been filed until December 30, 2016, and that a motion to dismiss was pending.

---

[14] Ms. Henry testified that Mr. Auten simply told her the first credit counseling certificate "wasn't good anymore," but didn't explain why. He did not reveal that her petition hadn't yet been filed when he asked her to again take the credit counseling course.

Mr. Auten was offered the opportunity to provide additional facts and explain the basis for filing his actions in this case.  While he provided some testimony, he offered no explanation or reason for his lengthy delay in filing Ms. Henry's petition.  As to why he filed the bankruptcy in Alaska, Mr. Auten stated he understood that Ms. Henry had originally intended to retain her Alaska residency despite her move to Oregon.  He offered no reason for his failure to inform his client of the dates for her original or continued § 341 meeting of creditors.  When asked why he did not inform his client of the UST's motion to dismiss, he replied that he understood that the motion was directed to missing documents that could still be provided.  Yet, Mr. Auten has never taken any steps to procure those documents, nor did he oppose or attend the initial hearing on the motion to dismiss.

## ANALYSIS

**A.      The Court's Sanction Powers**.

Courts are provided with several options to regulate and discipline the attorneys who appear before them.[15]  Under any theory, an attorney facing the imposition of sanctions must first be given notice of the charges made against him and an opportunity to be heard.[16]  For this reason, the court entered its Order, which advised Mr. Auten that sanctions were being considered under both Fed. R. Bankr. P. 9011 and the court's inherent authority.

Rule 9011 largely parallels Fed. R. Civ. P. 11, and requires that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after inquiry reasonable under the circumstances, –

---

[15] *Dignity Health v. Seare (In re Seare)*, 493 B.R.158, 217 (Bankr. D. Nev. 2013).

[16] *Peugot v. U.S. Trustee (In re Crayton),* 192 B.R. 970, 978 (B.A.P. 9th Cir. 1996).

7

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.][17]

In short, Rule 9011 permits sanctions where one presents a frivolous matter, or submits a document for an improper purpose. Although frivolousness and improper purpose are separate standards under Rule 9011, they substantially overlap.[18] For this reason, "bankruptcy courts must consider both frivolousness *and* improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other."[19] A frivolous filing is one that is neither "well-grounded in fact and warranted by existing law [nor] a good faith argument for the extension, modification, or reversal of existing law."[20] A filing is presented for an improper purpose if it is made "to harass or to cause unnecessary delay or needless increase in the cost of litigation."[21]

---

[17] Fed. R. Bankr. P. 9011(b).

[18] *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 830 (9th Cir. 1994).

[19] *Id.* (emphasis in original).

[20] *Id.* at 829 (internal quotations omitted).

[21] *Id.* (internal quotations omitted).

In addition to the sanction powers granted under Rule 9011, bankruptcy courts have the inherent power to sanction bad faith or willful misconduct.[22]  Sanctions under the court's inherent power are designed "to deter and provide compensation for a broad range of improper litigation tactics."[23]  Such sanctions serve to maintain the integrity of the profession but, because of their potency, they must be imposed with restraint and discretion.[24]  To ensure that they are, sanctions under the court's inherent powers are appropriate only upon a specific finding of bad faith or willful misconduct, supported by evidence of egregious conduct that rises above mere negligence or recklessness.[25]

**B.    Mr. Auten's Filing Violated Rule 9011.**

**1.    Improper Venue.**

Venue for bankruptcy is governed by 28 U.S.C. § 1408(1), which permits a bankruptcy case to be filed in the district:

> in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district[.][26]

---

[22] *In re Lehtinen*, 564 F.3d at 1058.  Jurisdiction to impose sanctions exists under 28 U.S.C. §§ 1334 and 157(b)(2)(A).  *Id.* at 1057; *see also Goldberg v. Goodman (In re Goodman),* 2013 WL 4767741, at *13 (B.A.P. 9th Cir. Sept. 5, 2013).

[23] *Lehtinen,* 564 F.3d at 1058 (citing *Fink v. Gomez*, 239 F.3d 989, 992-93 (9th Cir. 2001)).

[24] *Id.* at 1059.

[25] *Id.* at 1058; *see also Smyth v. Cha (In re Cha),* 2007 WL 7535049, at *6 (B.A.P. 9th Cir. Aug, 16, 2007).

[26] 28 U.S.C. § 1408(1).

Ms. Henry moved to Oregon in July 2014, shortly after paying Mr. Auten his legal fee to file bankruptcy for her.  As Mr. Auten advised Ms. Henry, the move may not have been an impediment to filing her bankruptcy in Alaska if he had filed after the receipt of his fee.  But, she did not sign her bankruptcy documents until she had lived in Oregon for ten months.  Even then, Mr. Auten did not file the bankruptcy for another 19 months after receiving Ms. Henry's paperwork.

At the time of the filing, Ms. Henry had not been an Alaska resident for well over two years.  Neither the debtor nor her principal assets had been located in the state within the 180 day period immediately preceding the filing of the petition.[27] As of the December 30, 2016 filing, venue in Alaska was clearly lacking.  Mr. Auten's explanation that he thought the debtor wanted to remain an Alaska resident is simply not believable in light of her questions regarding the effect of her move on the bankruptcy, the length of time that transpired, and her employment in Oregon.

### 2.    Stale, Incomplete Information on Bankruptcy Paperwork.

As part of their initial disclosures, bankruptcy debtors must state their gross income for the three years immediately prior to the filing, fill out a means test based upon the average total income received over the six months preceding the bankruptcy filing, and provide payment advices for the 60 days preceding the filing.  This information is critical to verifying the debtor's current financial status at the time of her bankruptcy filing, and her qualification for relief under chapter 7.  The SOFA filed by Mr. Auten only discloses Ms. Henry's gross income for 2015; which would have been deficient even if it had been filed in 2015.  On the debtor's Means Test,

---

[27] The debtor's schedules reflect that she owns no real property in Alaska, nor did she have a bank account located in Alaska.  The bulk of her scheduled personal property consisted of cash, clothing, books, personal photos, computer and furniture, which presumably traveled with her when she moved to Oregon. *See* Sched. B, ECF No. 1-2 at 2-4.

10

Mr. Auten used stale income figures from two *years* prior to the bankruptcy filing.[28]  Finally, he never obtained the debtor's payment advices for the 60 days prior to the bankruptcy.

Mr. Auten suggested that the filing of these dated documents was not wrongful because Ms. Henry's income did not materially differ from when she signed the documents 18 months earlier.  There are several problems with this argument, the first being that there is no evidence that Mr. Auten sought updated monthly income and expenses from his client before filing the petition.  In fact, Ms. Henry testified that she had received a raise between the time she signed the documents on May 16, 2015, and when the bankruptcy was filed on December 30, 2016.

Second, the information provided from 2015 is incomplete.  The SOFA required three years of income information measured from the date of the filing, but information for just one year was provided.  The Means Test affirmatively requires the debtor to provide her average income based upon the six months preceding the filing.  Yet, the form that was filed contained stale figures that did not accurately provide such information.  Most importantly, the debtor is also required to provide "copies of all payment advices or other evidence of payment received within 60 days before the date of the filing of the petition, by the debtor from any employer of the debtor."[29]  The pay stubs serve as a measure of independent verification for the debtor's calculation of monthly income.  There is no evidence that Mr. Auten ever requested copies of Ms. Henry's pay stubs – neither in mid-2015 when she signed her bankruptcy papers, nor before the petition was actually filed.  Mr. Auten still did not ask debtor to provide the pay stubs after the  UST's standing motion to dismiss, which was based in large part on this missing item.

---

[28] Ms. Henry's Means Test lists the same figure used in her Schedule I, for projected *future* monthly income.  Because current monthly income is based upon the six months prior to the filing of the petition, the applicable time months for Ms. Henry's Means Test signed on May 15, 2015, would have been from November 2015 though April 2016.

[29] 11 U.S.C. § 521(a)(1)(B)(iv).

11

### 3.      The Bankruptcy Filing was Frivolous, and Done for Improper Purpose.

Standing alone, the filing of a bankruptcy case in an improper venue might not warrant sanctions under Rule 9011.  Unfortunately, the instant filing must be placed in context.  For reasons that remain unknown, Mr. Auten did not timely file his client's bankruptcy petition.  When he ultimately filed the bankruptcy he did so without a good faith basis in fact or law to support the filing of the petition in the District of Alaska.  Ms. Henry had moved to Oregon more than two years before.  Given that the debtor was no longer a resident of Alaska there was also no good faith basis for claiming Alaska exemptions.[30]  Nor was there a good faith basis for submitting the outdated bankruptcy petition and related paperwork with stale information.  As discussed above, the Bankruptcy Code affirmatively requires a debtor to provide *current* information as to all aspects of her financial situation.  The stale and incomplete information on the bankruptcy documents supports a finding that the filing of this bankruptcy in the District of Alaska was frivolous.

The evidence amply demonstrates that Mr. Auten filed the bankruptcy, and the stale documents, for an improper purpose.  Having failed to promptly file the bankruptcy, Mr. Auten concealed this fact from his client.  The court credits Ms. Henry's testimony that Mr. Auten lead her to believe that the bankruptcy had been filed in 2015, shortly after she executed the petition, her schedules and the SOFA.  Mr. Auten has not refuted this testimony, or the characterization

---

[30] In Alaska, a debtor in bankruptcy may claim either federal or state exemptions.  *In re Tinkess*, 9 A.B.R. 33, 46 (Bankr. D. Alaska Sept. 26, 2008).  However, only residents of Alaska are entitled to claim the exemptions provided under AS 09.38.010 *et seq*.  AS 09.38.120(a).  An Alaska "resident" is "an individual who is physically present in the state and who intends to maintain a permanent home in Alaska."  AS 09.38.120(b).  Bankruptcy exemptions are "fixed" at the time of the filing of the petition.  *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1199 (9th Cir. 2012).  Because Ms. Henry had not been an Alaska resident since the summer of 2014, she was not eligible to claim her property exempt under the Alaska exemption scheme.  The longer "domicile" requirements imposed by 11 U.S.C. § 522(b)(3)(A) do not alter this result, because the Alaska exemption statutes apply solely to Alaska *residents*.  *See Cline v. Ford (In re Cline)*, 2015 WL 3988992, at *3-*5 (B.A.P. 9th Cir. Jun. 30, 2015).

that he lead her to believe that he had filed the bankruptcy in 2015.  Mr. Auten's unexplained instruction that Ms. Henry repeat the credit counseling course further supports the conclusion that counsel was attempting to conceal his failure to timely file the debtor's bankruptcy.  The second credit counseling course was required because the original counseling certificate had long expired by the time Mr. Auten filed the bankruptcy.  Even more telling, Mr. Auten failed to inform Ms. Henry of the events taking place in her bankruptcy once it was actually filed.  His failure to communicate the dates for the meetings of creditors or the motion to dismiss to his client establish that he was willing to let her case be dismissed rather than squarely address his lack of diligence in promptly filing the bankruptcy.  In short, he attempted to deceive his client and cover up his failure to timely file his client's bankruptcy.

Based on the entirety of the evidence, the court concludes that Mr. Auten filed the stale documents in the District of Alaska in an effort to conceal his failure to timely file the petition from his client.  The filing was frivolous and done for an improper purpose.  Sanctions under Rule 9011 are, therefore, appropriate.

## C.    Mr. Auten's Actions Also Constitute Egregious Conduct.

Mr. Auten's conduct also rises to the level of bad faith or willful misconduct necessary to trigger sanctions under the court's inherent powers.  Simple negligence may have been the reason he did not timely file Ms. Henry's bankruptcy in 2015, but his later actions indicate a knowing intent to deceive both his client and the court.  As discussed above, Mr. Auten deceived his client into believing that he had previously filed her bankruptcy in Alaska when he had not.  Further, Mr. Auten failed to communicate with his client regarding her obligations once he filed her bankruptcy case.  Despite using his address as the debtor's mailing address, he failed to notify Ms. Henry of the scheduled dates for her § 341 meeting of creditors.  Similarly, he failed to inform her of the UST's pending motion to dismiss.  Mr. Auten neither opposed the motion

13

to dismiss nor appeared at the initial hearing on that motion to defend his client's case. Instead, he abandoned his client, violating his professional responsibilities to communicate with and protect his client's interests. The court finds that these were knowing omissions, made by Mr. Auten in furtherance of his efforts to conceal his failure to timely file the bankruptcy case. Such conduct is egregious and demonstrates willful misconduct supporting the imposition of sanctions.

**D.      What sanctions are appropriate?**

Courts have a wide array of sanctions available to fashion an appropriate remedy to ethical violations, ranging from reprimands and requiring continuing legal education to disbarment.[31] In its Order, the court informed Mr. Auten that it would consider the imposition of monetary sanctions, disgorgement of fees, and suspension or disbarment from filing bankruptcy cases. Prior to the March 9 hearing, Mr. Auten disgorged to Ms. Henry the fees he received from her in connection with this bankruptcy.[32] During that hearing, Mr. Auten testified that he had also refunded to Ms. Henry the cost of the second credit counseling course, plus the amount of an Alaska permanent fund dividend that she had lost due to levy between the time she signed her bankruptcy paperwork and his filing of the petition in December 2016. Mr. Auten's voluntary disgorgement of these amounts eliminates the need to further address that sanction.[33]

When considering the imposition of suspension or disbarment as a sanction for ethical violations, courts are often guided by the American Bar Association Standards for Imposing

---

[31] *In re Seare*, 493 B.R. at 217.

[32] *See* Cert. of Service, ECF No. 25 (Mr. Auten certifies that he has sent all case documents in his possession, printouts from all documents on the case docket, and a check for $2,000.00 to Ms. Henry by Express Mail on Feb. 17, 2017).

[33] The court assumes that Mr. Auten paid the filing fee of $335.00 from the $2,000.00 he received from Ms. Henry. If this is inaccurate, Mr. Auten must also disgorge the filing fee to Ms. Henry, as well.

14

Lawyers Sanctions ("ABA Standards"), which provide a framework "to categorize misconduct and to identify the appropriate sanction."[34]   The Ninth Circuit Bankruptcy Appellate Panel ("B.A.P.") has adopted the ABA Standards.[35]   Under these standards, courts should consider the following factors when determining reasonable sanctions: (1) whether the duty violated was to a client, the public, the legal system, or the profession; (2) whether the attorney acted intentionally, knowingly or negligently; (3) the seriousness of the actual or potential injury caused by the attorney's misconduct; and (4) the existence of aggravating and mitigating factors.[36]   Although bankruptcy courts are not required to apply each of these factors, they all remain relevant.[37]

With respect to the first factor, Mr. Auten violated ethical and professional duties owed directly to his client.   Mr. Auten's statements during the hearing that he was unaware of the requirements imposed by the Means Test, and his attendant failure to file pay advices, demonstrates either a lack of competence in the field of consumer bankruptcy, or a knowing intention not to comply with those fundamental requirements.   Either situation raises concerns as to his competency to represent consumer debtors in bankruptcy.[38]   Mr. Auten's failure to file a bankruptcy for his client for roughly a year and half plainly violated his professional obligation

---

[34] *In re Crayton,* 192 B.R. at 980.

[35] *Id.*; *In re Brooks-Hamilton*, 400 B.R. 238, 252 (B.A.P. 9th Cir. 2009).   In *Crayton,* the B.A.P. stated it was error for a court not to consider all of the ABA Standards when imposing sanctions.   The B.A.P. has recently modified *Crayton* to clarify that the failure to consider each of the ABA Standards is not an abuse of discretion.   *In re Nguyen*, 447 B.R. 268, 277-78 (B.A.P. 9th Cir. 2011).

[36] *In re Crayton,* 192 B.R. at 980 (referencing ABA Standard 3.0).

[37] *In re Nguyen*, 447 B.R. at 277-78.

[38] Alaska R. Prof'l Conduct 1.1(a) requires that "[a] lawyer shall provide competent representation to a client."

to "act with reasonable diligence and promptness in representing a client."[39]  Equally significant, Ms. Henry's testimony demonstrates that Mr. Auten failed to promptly and honestly communicate with his client regarding the fundamental scope of his representation – the filing and status of her bankruptcy.  A lawyer is required to "keep a client reasonably informed about the status of a matter undertaken on the client's behalf and promptly comply with reasonable requests for information."[40]  In this instance, Mr. Auten mislead Ms. Henry.  He caused her to believe that her bankruptcy had been filed sometime in 2015 after she had signed and returned her bankruptcy papers to him.  Mr. Auten also failed to inform her of the scheduled creditors' meetings or the hearing on the UST's standing motion to dismiss, despite Ms. Henry's efforts to receive periodic updates regarding her case.

The second factor to be considered when weighing suspension or disbarment as a sanction for ethical violations is the attorney's mental state, with the severity of the sanction being tied to culpability.  The severest sanctions are reserved for the most culpable mental state involving intentional acts.  Intent is defined as acting with "the conscious objective or purpose to accomplish a particular result."[41]  Actions that are only knowingly taken involve a "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."[42]  The least culpable mental state is negligence.[43]

---

[39] Alaska R. Prof'l Conduct 1.3.

[40] Alaska R. Prof'l Conduct 1.4(a).

[41] ABA Standards, Part III: Black Letter Rules, Definitions.

[42] *Id.*

[43] The ABA Standards define negligence as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."  *Id.*

Initially, Mr. Auten's failure to timely file Ms. Henry's bankruptcy appears attributable to mere negligence.  But given the lengthy passage of time and his actions subsequent to Ms. Henry's return of the bankruptcy paperwork to him, Mr. Auten's mental state shifted from negligence to intentional conduct when he: (1) fostered Ms. Henry's understanding that he had filed her bankruptcy when he had not; (2) instructed Ms. Henry to retake her credit counseling course without disclosing that her bankruptcy had not yet been filed; and (3) failed to advise his client of the dates of her § 341 meeting of creditors or the UST's motion to dismiss.

The third factor the court should consider under the ABA Standards is the "potential or actual injury caused by the lawyer's misconduct."[44]  In this case, it is not clear whether Ms. Henry has suffered actual or potential injury due to Mr. Auten's actions, and his failure to promptly file her bankruptcy in 2015.  The delay in filing may have resulted in the levy on Ms. Henry's PFD, but Mr. Auten has refunded that sum to her, as well as his fees and the cost of the second credit counseling course.  Moreover, Ms. Henry did ultimately obtain the benefit of a bankruptcy stay, and the late filing has not rendered her ineligible for a bankruptcy discharge. However, the court intends to dismiss this petition due to the incomplete documentation, the improper venue, and the debtor's ineligibility to claim Alaska exemptions.  Should Ms. Henry file a new petition in the District of Oregon she will need to address the impact that this filing will have on her right to the automatic stay in the subsequent case, but this is not an insurmountable issue.[45]  Aside from Ms. Henry's understandable frustration with Mr. Auten's actions, it does not appear that she has suffered *significant* injury under these unfortunate circumstances.

---

[44] ABA Standard 3.0(c).

[45] *See* 11 U.S.C. § 362(c)(3).

17

The ABA Standards provide a matrix of sanctions, weighted by the level of attorney culpability and the degree of harm involved, to address specific ethical violations. Applying those guidelines here, Mr. Auten's actions appear to qualify for a sanction of suspension or reprimand, rather than disbarment. His lack of competence in the bankruptcy field suggests that a reprimand is appropriate, because the evidence shows that he either did not understand the relevant legal doctrines and procedures for representing a consumer debtor, or was negligent in determining his competence. Yet, his failure to timely file his client's petition demonstrates a concerning lack of diligence, which would warrant a stronger sanction than reprimand. The sanction of suspension is generally supported when "a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client."[46] Ultimately, Mr. Auten's failure to candidly advise his client of the status of her case supports suspension, given the court's finding that he deceived Ms. Henry.[47]

The existence of aggravating or mitigating factors may temper the sanctions suggested under the ABA Standards. Aggravating factors that may warrant an increase in sanctions include, "(1) dishonest or selfish motive; (2) a pattern of misconduct; (3) multiple offenses; (4) refusal to acknowledge wrongful nature of conduct; and (5) substantial experience in the practice of law."[48] Mitigating factors that may be considered to lessen potential sanctions include: "(1) absence of a prior disciplinary record; and (2) timely good faith effort to make restitution or to

---

[46] ABA Standard 4.42(a).

[47] ABA Standard 4.62 provides that suspension is "generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client."

[48] *In re Seare*, 493 B.R. at 223 (citing ABA Standard 9.22).

rectify consequences of misconduct."[49]  With regard to this consideration, courts are directed to take into account any history of ethical violations, or the absence of such, and how the court reacted to the instant ethical violation.

There are no significant aggravating factors present.  No evidence has been presented that Mr. Auten has been involved in prior ethical violations.  Nor is there any evidence that his failure to timely file the bankruptcy was prompted by dishonest or selfish motives.  Yet, Mr. Auten's limited foray into consumer debtor bankruptcy has not been successful.  He has filed two other bankruptcy cases in this district on behalf of individual consumer debtors.  One of these cases was dismissed for the debtor's failure to procure prepetition credit counseling.  The other case was dismissed on the UST's standing motion for the debtor's failure to file required documents, including copies of payment advices.  With respect to this latter case, Mr. Auten testified that he lost contact with the debtor, and could not obtain the missing documentation.  While the court attributes no significance to the dismissal of that case, the lack of prepetition credit counseling and the failure to submit payment advices in the former case raise considerable concern that Mr. Auten either fails to appreciate the significance of these fundamental requirements or willingly disregards them to his clients' peril.

As to the mitigating factors, as noted above, there is no evidence of any improper motive for the late-filed petition, nor does Mr. Auten have a prior disciplinary record.  Moreover, Mr. Auten has voluntarily made restitution to Ms. Henry.  Finally, he is inexperienced in bankruptcy practice.  The court does not give this third factor much weight in the mitigation analysis,

---

[49] *Id.* at 224 (citing ABA Standard 9.32).

however, because it was also discussed above in evaluating Mr. Auten's motivation in failing
to timely file the bankruptcy.

**E.      Sanctions to be Imposed in this Case.**

Notwithstanding Mr. Auten's professed lack of knowledge concerning fundamental
aspects of debtor representation, due to the intentional nature of his actions in concealing the
tardiness of the bankruptcy filing, I find that it is appropriate to sanction Mr. Auten as follows:

(1)     Mr. Auten shall be suspended from representation of debtors within this
district for a period of one year.  At the hearing the court informed Mr.
Auten that he was suspended from filing further bankruptcy cases pending
issuance of this written order.  Accordingly, the one year suspension
period shall run from the date of the hearing on the Order, March 9, 2017,
until March 8, 2018.

(2)     Mr. Auten shall also be required to attend nine (9) hours of continuing
legal education in the area of representation of consumer bankruptcy
debtors, and three (3) hours of continuing legal education in the area of
ethical responsibilities to clients.  Mr. Auten must provide certification of
completion of the 12 hours of continuing legal education prior to filing
any further bankruptcy cases.  *Failure to complete the continuing legal
education requirements set out in this paragraph shall result in Mr.
Auten's permanent suspension from debtor representation in this district.*

**F.      The Debtor's Petition Shall be Dismissed.**

At the March 9 hearing, the court discussed with the parties the alternatives of either
transferring this case to the District of Oregon or dismissing the case so that the debtor could
refile anew in that district.  The debtor stated that she had consulted with a bankruptcy attorney
in Medford, Oregon, who had explained both options to her.  Based on the discussion with the
parties, this court has determined that dismissal is the appropriate action under the circumstances
present here.  Venue of this case in the District of Alaska was improper from the outset.  The
debtor's petition, schedules, SOFA, and Means Test are on obsolete forms.  Further, these

documents were incomplete and contained stale information. Finally, the debtor is ineligible for

Alaska state exemptions.  From the court's view, it would be more efficient to dismiss this

bankruptcy so that Ms. Henry may file a new petition, on current forms, in the District of

Oregon.  For this reason, this bankruptcy case shall be dismissed without prejudice.

 An order shall be entered consistent with this memorandum.

 DATED: July 5, 2017.

        BY THE COURT

         /s/ Gary Spraker  
        GARY SPRAKER
        United States Bankruptcy Judge

Serve: Eric Auten, P.O. Box 2717, Valdez, Alaska 99686
   Margaret M. Henry, P. O. Box 2717, Valdez, Alaska 99686
   Margaret M. Henry, 718 Northeast 8th St., Apt. 2, Grants Pass, OR 97526
   Matthew A. Casper, Esq. (courtesy copy), OlsonDaines PC,
     924 Town Centre Dr., Medford, OR 97504
   Nelson Page, Esq., Alaska Bar Counsel*
   Kenneth Battley, Trustee
   Kathryn Evans Perkins, Esq.
   U.S. Trustee
   J. Stafford, Clerk

*served via email 7/5/17 - √ aam